# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| W.A. MONCRIEF, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT ) <br> OF INTERIOR, ) <br> ) <br> and ) <br> ) <br> JAMIE E. CONNELL, ) <br> *in her official capacity as State Director,* ) <br> *Montana Dakotas Office, Bureau of Land* ) <br> *Management,* ) <br> ) <br> Defendants. ) | Civil Case No. 17-609 (RJL) <br><br> **FILED** <br> **SEP 2 4 2018** <br> Clerk, U.S. District & Bankruptcy <br> Courts for the District of Columbia |

## MEMORANDUM OPINION
September 24, 2018 [## 19, 21, 24]

Plaintiff W.A. Moncrief, Jr. ("Moncrief"), the holder of a federal oil and gas lease in Montana, brings suit against the United States Department of Interior ("Interior") and the Director of the Montana Bureau of Land Management ("BLM") (collectively, "federal defendants" or "the Government") relating to the Government's cancellation of his lease after suspending all oil and gas drilling and extraction activity on that lease for more than thirty years. *See* Compl. [Dkt. # 1] ¶¶ 9–11, 48–59. Plaintiff seeks declaratory and injunctive relief, including that this Court vacate the cancellation and reinstate the lease, based on federal defendants' alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq. See* Compl. ¶¶ 60–86. Before this Court are the parties'

1

Cross-Motions for Summary Judgment. *See* Pl.'s Motion for Summary Judgment [Dkt. #19] ("Pl.'s Mot."); Defs.' Cross-Motion for Summary Judgment [Dkt. # 21] ("Defs.' Mot."); Df.-Intervenor's Cross-Motion for Summary Judgment [Dkt. # 24] ("Df-Intervenor's Mot."). For the following reasons, the plaintiff's motion for summary judgment [Dkt. # 19] is GRANTED and defendants' motions [Dkt. ## 21, 24] are DENIED.

## Background

### I. Procedural History

The W.A. Moncrief ("Moncrief") lease is one of several leases located in the Badger-Two Medicine ("Badger-Two") area in the Lewis and Clark National Forest in northwestern Montana.[1] In 1981, the United States Forest Service ("Forest Service") prepared a 165-page Environmental Assessment ("EA") of oil and gas drilling in the Lewis and Clark National Forest, including the Badger-Two area. *See* Non-Wilderness Leasing Environmental Assessment, Joint Appendix ("J.A.") Vol. VI [Dkt. # 32-3] at 44–54 (FS-HC-014364–014434). The EA considered alternatives to leasing, including "no action" type alternatives, and engaged in American Indian Religious Freedom Act consultation with the Blackfeet Tribe. *See id.* at 50 (FS-HC-014404). The Forest Service ultimately issued a Decision Notice ("DN") and Finding of No Significant Impact ("FONSI"), approving "Alternative 3" which granted leases "with surface occupancy...only for accessible areas that could be protected" and provided that "[a]fter lease issuance, any

---

[1] Also before this court is a challenge to the Secretary's cancellation of the lease previously held by plaintiff Solenex LLC. *See Solenex LLC v. Sally Jewel et al.*, Civil Case No. 13-cv-993 (D.D.C.).

2

proposed oil and gas activities would be fully analyzed under NEPA." *Id.* at 45–46 (FS-HC-014365–66).

The Forest Service issued Federal Lease No. 53320 to Randall L. Weeks ("Weeks") on June 1, 1982. *See* Issuance of Lease, J.A. Vol. I [Dkt. # 31-1] at 69–80 (BLM-M000764–774). Weeks subsequently sold the lease to Atlantic Richfield Corporation ("ARCO") in December 1983 for $1.3 million. *See* 1/13/84 Lease Assignment, J.A. Vol. I at 49 (BLM-M000687). In May 1988, ARCO requested a suspension of the lease while BLM was considering applications for permits to drill ("APD") on other leases in the Badger-Two area, including the leases owned by Fina Oil (subsequently acquired by Solenex LLP) and Chevron, *see* 6/1/88 DOI Letter to ARCO, J.A. Vol. I at 68 (BLM-M000746), intending that suspension to "terminate upon completion of the Environmental Impact Statement for [the] pending application[s]…at which time the BLM and Forest Service would consider other drilling proposals." *Id.* It was with the understanding that this was a "temporary suspension" that W.A. "Monty" Moncrief purchased the lease for "substantial consideration" on March 1, 1989. *See* 6/1/82 Lease Assignment, J.A. Vol. I at 66–67 (BLM-M000740–741); *see also* Decl. of C.B. Moncrief ("Moncrief Decl.") [Dkt. # 19-2] ¶ 3.

The Forest Service and BLM prepared a joint Environmental Impact Statement ("EIS") and approved the Fina and Chevron APDs in 1991. *See* Forest Service ROD, J.A. Vol. I at 106–07 (FS002148–2149). The BLM and Forest Service later withdrew approval to seek further review of traditional practices in the Badger-Two area, but then approved the Fina and Chevron APDs again in 1993. *See* 1/15/93 BLM Letter to Fina Approving

APD with Conditions, J.A. Vol. I at 108 (FS002207). Yet even though the Chevron and Solenex APDs had been approved, BLM continued to suspend leases in the Badger-Two Medicine area from 1993-1998, including the Moncrief lease. *See generally* Defs.' Mot. at 7–9; Pl.'s Mot. at 12.[2] In 2002, after consultation with the Blackfeet Nation under Section 106 of the NHPA, a portion of Badger-Two area was designated as a "traditional cultural district" or "TCD." *See* 1/31/02 Determination of TCD Eligibility Notification, J.A. Vol. IV [Dkt. # 32-1] at 201 (FS005942). This area did not originally include the Solenex proposed well location or the Moncrief lease. *See* 2002 Map of Badger-Two Medicine TCD, J.A. Vol. I at 163 (FS004000). However, after 10 years of continued consultation, additional acreage including the Moncrief Lease was added to the TCD in 2012. *See* 9/21/15 ACHP Final Comments, J.A. Vol. I at 3–11 (FS006584–6592); 6/20/13 Letter re Boundary Expansion, J.A. Vol. IV at 223 (FS006010); 2014 Map of Badger-Two Medicine TCD, J.A. Vol. II [Dkt. # 31-2] at 20 (FS004742).

Curiously, the Forest Service did not make a determination of adverse effects under the NHPA until 2014, finding that there were no mitigation measures agreeable to the Blackfeet Tribe that would allow for development in the Badger-Two area. *See* 12/3/14 Determination of Adverse Effects, J.A. Vol. V [Dkt. # 32-2] at 69–79 (FS006532–654). Additional consultations took place in 2015. *See* Defs.' Mot. at 10. On September 21,

---

[2] Only in 1998 did the Forest Service first cite "legislation to conserve and protect the natural resources of the area" as the primary reason for suspending the Moncrief lease from 1993-98. *See* 7/15/98 Forest Service Letter to Moncrief, J.A. Vol. I at 51–53 (BLM-M000717–719).

2015, the Advisory Council of Historic Preservation ("ACHP") recommended that the Departments of Interior and Agriculture cancel the Solenex lease. *See* ACHP Comments, J.A. Vol. VI at 8 (FS006590). Then on March 17, 2016, BLM disapproved Solenex's APD and cancelled its lease, claiming that the initial NEPA and NHPA analyses upon which its leasing decision was based were inadequate. *See* Defs.' Mot. at 11.

In late 2016, a Moncrief employee received a phone call informing it that its lease would likely be cancelled as well. *See* Defs.' Answer ¶ 56; Email Messages, J.A. Vol. 1 at 32 (BLM-M000665). Moncrief's attorneys sent a letter to Interior on November 23, 2016, requesting that the lease not be cancelled and also requesting a hearing. *See* 11/23/16 WPD&N Letter, J.A. Vol. 1 at 84–85 (BLM-M000801–802). Interior *never* responded to Moncrief's request for a hearing, but sent a letter decision administratively cancelling the Moncrief Lease on January 6, 2017, in the waning days of the Obama administration. *See* 1/6/17 Letter to Moncrief, J.A. Vol. 1 at 36–48 (BLM-M000670–682). Interior concurrently published a press release on January 6, 2017 noting that all leases in the Badger-Two area were being terminated. *See* 1/6/17 Press Release, J.A. Vol. 1 at 83 (BLM-M00800). Moncrief filed suit against Interior and BLM in this court on April 5, 2017. Thus, I now must review the lawfulness of federal defendants' cancellation of the Moncrief lease.

## II. Regulatory Landscape

Plaintiff Moncrief argues that the agency's authority to administratively cancel a lease is limited under the Mineral Leasing Act of 1920 ("MLA"). 30 U.S.C. §§ 181-287. The MLA governs the Secretary of Interior's (hereinafter "the Secretary") authority to

issue leases for "[a]ll lands subject to disposition under this Act which are known or believed to contain oil or gas deposits." *Id.* § 226(a). Pursuant to the MLA, the Secretary may also cancel those leases if the lease is (1) "in violation of the MLA, unless the current leaseholder is a bona fide purchaser," *id.* §§ 184(h)(1), (h)(2); (2) "when a lessee has violated the statute, regulations, or the lease itself, *id.* § 188(a); or (3) "where the lessee is in violation of lease provisions after at least 30-days' notice" and the lease is a non-producing lease, *id.* § 188(b). The Department of Interior has also promulgated its own regulations governing the cancellation of leases. *See* 43 C.F.R. §3108.5. Namely, the Secretary can cancel leases for either (1) the lessee's failure "to comply with any of the provisions of the law, the regulations issued thereunder, or the lease" after notice and 30 days to cure, 43 C.F.R. § 3108.3(a), or (2) the agency's determination that the lease was "improperly issued." *Id.* § 3108.3(d).

As asserted by federal defendants, one of the ways in which the lease could be "improperly issued" is by non-compliance with the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA"). Defs.' Mot. at 13. NEPA requires that agencies take a "hard look" at the environmental consequences, *Robertson v. Methow Valley Citizens Council*. 490 U.S. 332, 350 (1989), of "major Federal actions" that "significantly affect[] the quality of the human environment." 42 U.S.C. § 4332(C); 40 C.F.R. §§ 1501.3, 1501.4(c).[3] Nevertheless, an "agency is not constrained by

---

[3] As our Circuit has held, "NEPA's requirements vary based on the type of agency action in question." *City of Phoenix, Arizona v. Huerta*, 869 F.3d 963, 971 (D.C. Cir. 2017), *opinion amended on reh'g*, 881 F.3d 932 (D.C. Cir. 2018). It is well settled that only "[a]ctions with significant environmental effects require a full environmental-impact

6

NEPA from deciding that other values outweigh the environmental costs." *Robertson*, 490 U.S. at 350.

Federal defendants also allege that the lease at issue was in violation of the National Historic Preservation Act ("NHPA"). Defs.' Mot. at 14. NHPA requires that the agency "take into account the effect of [an] undertaking on any historic property." 54 U.S.C. §§ 300308, 306108. This requires that the agency consult with the Advisory Council of Historic Preservation and seek its comments. *See id.* NHPA consultation is usually considered adequate where the acting agency has "visited the site [and] consulted with the preservation authorities" before concluding there will be no adverse impact on the historic property. *Duncan's Point Lot Owners Ass'n Inc. v. F.E.R.C.*, 522 F.3d 371, 377 (D.C. Cir. 2008); *see also Nat'l Parks Conservation Ass'n v. United States ("NPCA")*, 177 F. Supp. 3d 1 (D.D.C. 2016) (permitting mineral development in a designated NHPA historic district after the Forest Service conducted an environmental assessment but not a full-blown environmental impact statement). But, importantly here, neither NEPA nor NHPA dictates a substantive outcome. *See, e.g., Sierra Club v. Federal Energy Regulatory Commission*, 867 F.3d 1357, 1367 (D.C. Cir. 2017) ("NEPA directs agencies only to look hard at the environmental effects of their decisions, and not to take one type of action or another.") (internal quotation marks omitted); *id.* ("[NEPA] is primarily information-forcing"); *Delaware Riverkeeper Network v. F.E.R.C.*, 753 F.3d 1304, 1310 (D.C. Cir. 2014) ("NEPA

---

statement" and that "[a]ctions with impacts that are not significant or are unknown require a briefer environmental assessment." *Id.* at 971–72.

is 'essentially procedural' and designed to ensure 'fully informed and well-considered decision[s]' by federal agencies) (quoting *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978)); *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003) ("An essentially procedural statute, [NHPA] imposes no substantive standards on agencies, but it does require them to solicit the Council's comments and to take into account the effect of their undertakings.") (internal citation omitted).

Any agency action can be set aside under the APA where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As articulated by the Supreme Court, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.* ("State Farm"), 463 U.S. 29, 43 (1983). Nevertheless, even an action that is within the agency's statutory authority may still be arbitrary and capricious if the agency fails to exhibit reasoned decision-making. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) ("'Unexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice...'"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) ("A central principle of administrative law is that, when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it."). That is the lens through which I must view the Government's decision to cancel the Moncrief lease for purported pre-lease violations of NEPA and NHPA.

## Analysis

### I. The Court Need Not Resolve Whether *Boesche* Grants the Secretary Unlimited Cancellation Authority

Under Federal Rule of Civil Procedure 56(a), summary judgment shall be granted to the moving party "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Because this case challenges a final agency action under the APA—the cancellation of plaintiff's lease—to determine whether summary judgment is warranted I must determine "whether the agency acted within the scope of its legal authority, ... explained its decision, ... relied [on facts that] have some basis in the record, and ... considered the relevant factors." *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995). Here, I consider whether the Department of Interior and Bureau of Land Management, through the Secretary, acted reasonably in cancelling the Moncrief lease after more than *thirty* years for an alleged pre-lease error.

As a preliminary matter, the parties disagree as to whether or not the MLA grants federal defendants either expansive or limited authority to administratively cancel leases for pre-lease errors. Defendants and defendant-intervenors argue that the Secretary has the inherent statutory authority to administratively cancel leases. Defs.'s Mot. at 14. Defendants point to 43 U.S.C. §2, which authorizes the Secretary to "perform...all executive duties...in anywise respecting ...public lands," including to "correct [an] error []" of her predecessor. *Boesche v. Udall*, 373 U.S. 472, 478 (1963).

The Supreme Court in *Boesche* upheld the Secretary's cancellation of a lease that was "defective because it failed to include an adjoining 40-acre tract under application by

9

another party." *Id.* at 484. Reviewing the legislative history of the MLA, the Court observed that "[i]t would thus be surprising to find in the Act, which was intended to expand, not contract, the Secretary's control over the mineral lands of the United States, a restriction on the Secretary's power to cancel leases issued through administrative error— a power which was then already firmly established." *Id.* at 481. As such, federal defendants read into *Boesche* the Supreme Court's blessing to the Secretary's broad lease-cancellation authority, at lease for pre-lease errors.

Plaintiff Moncrief, on the other hand, would limit *Boesche*, 373 U.S. at 485, to its facts, pointing to the Supreme Court's language at the end of the opinion:

> We sanction no broader rule tha[n] is called for by the exigencies of the general situation and the circumstances of this particular case. We hold only that the Secretary has the power to correct administrative errors of the sort involved here by cancellation of leases in proceedings timely instituted by competing applicants for the same land.

*Id.* Moncrief argues that the Secretary's administrative cancellation authority is limited, not absolute, and is restricted by Congress to "only three circumstances":

(1) Where a lease is in violation of the MLA itself, Interior may institute judicial proceedings in district court. 30 U.S.C. § 184(h)(1), (h)(2) unless the leaseholder is a bona fide purchaser;
(2) Where a lessee on a *producing* lease has violated the statute, regulations, or terms of the lease itself, Interior may also institute proceedings in federal district court. *Id.* § 188(a);
(3) Where a lessee on a *non-producing* lease has violated the lease provisions, Interior may administratively cancel a non-producing lease after 30-days notice. *Id.* § 188(b).

Pl.'s Mot. at 3.

Not surprisingly, this dispute over the scope of the Secretary's authority to cancel leases through the administrative, rather than judicial, process, is not limited to the

10

circumstances of this case and has never been squarely resolved by our Circuit.[4] To be sure, "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions, at least if done in a timely fashion." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014). But at the same time, "Congress…undoubtedly can limit an agency's discretion to reverse itself" with statutory language. *Id.* (quoting *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008)).[5]

But thankfully, I need not resolve such a broad-sweeping question here because this case can be resolved on other grounds. For purposes of my analysis, I will assume that the Secretary does in fact have the statutory authority to administratively cancel leases under the circumstances presented in this case. Yet, even assuming that authority, the Secretary's action cannot be "arbitrary, capricious, an abuse of discretion, or otherwise not in

---

[4] *But cf. Silver State Land, LLC v. Scheider*, 843 F.3d 982, 990 (D.C. Cir. 2016) (upholding the Secretary's authority to terminate a land sale *before* the land patent was issued observing in dicta that the Supreme Court has condoned the authority to cancel a patent post-issuance as well).

[5] Lower courts remain split on whether or not Congress has indeed limited the scope of the Secretary's authority under the MLA. *Compare Griffin & Griffin Expl., LLC v. United States*, 116 Fed. Cl. 163, 176 (2014) ("The Secretary of the Interior has the authority to cancel any oil and gas lease issued in violation of the Mineral Leasing Act and implementing regulations or for administrative errors committed prior to the issuance of the lease.") *and Grynberg v. Kempthorne*, No. 06-cv-01878, 2008 WL 2445564, at *4 (D. Colo. June 16, 2008) ("[I]n *Boesche* [], the Supreme Court confirmed that the Secretary's 'general powers of management over the public lands' gives him 'authority to cancel [a] lease administratively for invalidity at its inception.'") (internal citation omitted) *with Douglas Timber Operators, Inc. v. Salazar*, 774 F. Supp. 2d 245 (D.D.C. 2011) (Bates, J.) (Noting that "[*Boesche's*] ruling was expressly limited to 'the exigencies of the general situation and the circumstances of this particular case' and noted that judicial safeguards were in place to 'not open the door to administrative abuses.'") (internal citation omitted).

11

accordance with law." 5 U.S.C. § 706(2)(A); *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (courts must determine "whether the agency acted arbitrarily or capriciously"). Unfortunately for the defendants it was here.

## II. The Secretary's Decision to Cancel the Moncrief Lease Was Arbitrary and Capricious

An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43. "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* "In other words, the question is not what [the Court] would have done, nor whether [the Court] agree[s] with the agency action," but "whether the agency action was reasonable and reasonably explained." *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 726 (D.C. Cir. 2017) (internal quotation marks omitted). As I previously noted in my order granting partial SJ to Solenex for the 30-year suspension of its lease, Courts in our Circuit have long-held that *unreasonable* agency delay violates the APA. *See* Order Granting Partial Summary Judgment to Solenex LLP, *Solenex v. Jewell*, 156 F. Supp. 3d 83, 84 (D.D.C. 2015) (quoting *Nader v. F.C.C.*, 520 F.2d 182, 206 (D.C. Cir. 1975)) ("[t]here comes a point when relegating issues to proceedings that go on without conclusion in any kind of reasonable time frame is tantamount to refusing to address the issues at all and the result is a denial of justice").[6] The reasonableness of an agency

---

[6] Indeed, "federal courts are generally less likely to accord an agency the inherent power

rescission of a leaseholder's right must thus be judged in light of the time that has elapsed and the resulting reliance interests at stake. Even if agencies have the power to rescind decisions made by their predecessors, they must still exercise that power within a reasonable amount of time. An unreasonable amount of time to *correct* an alleged agency error, where the record shows that error was readily discoverable from the beginning, violates the APA. *See, e.g., Prieto v. United States,* 655 F. Supp. 1187, 1191 (D.D.C. 1987) (finding that agency rescission of trust status to an Indian land grant after nine months was arbitrary and capricious); *see also Am. Wild Horse Pres. Campaign,* 873 F.3d at 928 (finding that agency rescission of wild horse territory designation after twenty years without explanation was arbitrary and capricious). Here, I find that the Secretary's "eleventh-hour interpretation of his duty is owed no great degree of deference." *Texas Oil and Gas Corp v. Watt,* 683 F.2d 427, 431 (D.C. Cir. 1982).

In *Watt*, our Circuit Court reversed the district court's approval of the Secretary's decision to cancel leases issued on military lands, reasoning that the cancellation was arbitrary and capricious. *Id.* The court ruled that the Secretary could not rescind the leases based on newly-discovered violations of a later-in-time law passed by Congress. *Id.* While the issue in *Watt* was the Secretary's mistaken belief that he was *required* to cancel for pre-lease errors, rather than *permitted* to do so as defendants argue here, the circumstances are similar insofar as the court refused to sanction "a retroactive exercise of discretion to which it is impossible to ascribe any rational purpose." *Id.* at 434. In particular, our Circuit Court

---

to reconsider…when the agency has not reconsidered its decision within a reasonable time period…" Daniel Bress, *Administrative Reconsideration*, 91 Va. L. Rev. 1737, 1748 (2005).

13

emphasized the reliance interests at stake, observing that:

> "Persons affected by statutes implemented by agency discretion would not know where to look to determine when and to what extent the status quo had been altered. And we cannot allow an agency to ignore a statutory amendment for a time and later claim, as here, that regulations based on the unamended statute render void any actions taken in accordance with the clear language of the amended statute. An agency possessed of discretion may exercise it or not; but it may not exercise it and then take back its action on the ground that, based on the duty to adhere to its own regulations irrespective of what the statute says, it lacked the discretion in the first place."

*Id.* at 433–34.

Similarly here, federal defendants' exercise of authority to cancel Moncrief's lease for pre-lease errors was arbitrary and capricious because of the failure to consider the substantial reliance interests at play. For nearly a decade, Moncrief, along with other leaseholders, received letters from the Secretary suspending their leases under the understanding that Interior was considering the area for wilderness designation. *See, e.g.*, Letters Suspending Moncrief Lease, J.A. Vol. I at 51–65 (BLM-M000717–737). They received *no* notice of any supposed violation. It was not until 2002 that Interior began consultation with the Blackfeet Nation under Section 106 of the NHPA. *See* 1/31/02 Determination of TCD Eligibility Notification, J.A. Vol. IV at 201 (FS005942). Even then, leaseholders received *no* notice that their leases might be subject to cancellation. Defendants cannot hide behind the consultation process as a fair notice to leaseholders that something might be amiss with their leases. The agency's own delinquency in reaching a resolution does not diminish the reliance interests of leaseholders who had been waiting on that resolution for more than *thirty years*. Thus, I find that federal defendants' failure to consider those interests was arbitrary and capricious in violation of the APA. 5 U.S.C. §

706(2)(A).[7]

### III. Even Assuming Interior Had Authority to Cancel the Lease, Plaintiff Moncrief Is a Bona Fide Purchaser Within the Meaning of the APA

The arbitrary cancellation of Moncrief's lease, *without notice*, also violates his rights a *bona fide* purchaser under the MLA, 30 U.S.C. § 184(h)(2); 43 C.F.R. § 3108.4, because Plaintiff Moncrief "[1] acquired his interest in good faith, [2] for valuable consideration, and [3] without notice of the [alleged] violation," *Sw. Petroleum Corp. v. Udall*, 361 F.2d 650, 656 (10th Cir. 1966).

Defendants claim that only a violation of the MLA itself, not violations of NEPA, NHPA, or other statutes, warrants *bona fide* purchaser protection. Defs.' Mot. at 20. But that argument is entirely circular! Defendants cannot at once argue that a violation of NEPA and NHPA renders a lease "subject to cancellation" under its regulations, *see* 43

---

[7] I also note that defendants apparently ignored the discretion with which agencies apply procedural statutes like NEPA and NHPA as part of the consultation process. *See, e.g., Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (noting that the issuance of a detailed, 293-page EA served the same purpose as an EIS of taking a "hard look at environmental consequences"); *Myersville Citizens for a Rural Cmty., Inc. v. F.E.R.C.*, 783 F.3d 1301, 1322–26 (D.C. Cir. 2015) (upholding "[the] Commission's consideration of the [proposed] alternative in its Environmental Assessment [as] adequate"); *Duncan's Point Lot Owners Ass'n Inc.*, 522 F.3d at 377 (noting that our Circuit "has upheld agency determinations not to prepare an EIS" in several instances); *City of Grapevine, Tex. v. Dep't of Transp.*, 17 F.3d 1502, 1509 (D.C. Cir. 1994) (finding no violation of the NHPA where agency approved a project before consulting with the ACHPA because the project "was expressly conditioned upon completion of the § 106 process"). However, I need make no finding on whether there was in fact compliance with NEPA or NHPA. Regardless of the lawfulness of the lease's issuance thirty years ago, the agency's rescission of the lease must still comply with the APA. *See, e.g., Am. Wild Horse Pres. Campaign*, 873 F.3d at 928 ("we cannot condone the correction of one error by the commitment of another") (quoting *Gray v. Mississippi*, 481 U.S. 648, 663 (1987)) (internal quotation marks omitted).

C.F.R. §3108.3(d), and at the same time deprive plaintiff of the the exception in those same regulations prohibiting cancellation "to the extent that such an action adversely affects the title or interest of a *bona fide* purchaser." 43 C.F.R. § 3108.4. That is too clever by half. Neither a literal, nor a logical, reading of the agency's regulations could support such a result.

Plaintiff Moncrief easily qualifies for bona fide purchaser status because he tendered valuable consideration to his predecessor-in-interest, ARCO. *See* Moncrief Decl. [Dkt. # 19-2] ¶ 2. There is no evidence that he did not acquire his interest in good faith. And as for notice, notice of continued suspensions while an EIS was conducted on APDs on *other* leases is hardly notice that his lease was void for the reasons already outlined above. Indeed, Moncrief's predecessor, ARCO, requested the suspension on the understanding that it would "terminate upon completion of the Environmental Impact Statement for [the] pending application[s]." *see* 6/1/88 DOI Letter to ARCO, J.A. Vol. I at 68 (BLM-M000746); Pl.'s Mot. at 11. And the suggestion of voidness is further rebutted by Interior's failure to cancel the lease to remedy the supposed violation for more than thirty years.

Because I find a violation of the APA on the grounds above, I need not reach Moncrief's additional arguments that the Secretary's cancellation violated his due process rights and was time barred by the statute of limitations.

## CONCLUSION

For the reasons outlined above, I find that federal defendants' decision to cancel the Moncrief lease was arbitrary and capricious. Thus, for all of the reasons outlined in this Opinion, plaintiff's Motion for Summary Judgment [Dkt. #19] is GRANTED, defendants'

Cross-Motion for Summary Judgment [Dkt. #21] and defendant-intervenor's Cross-Motion for Summary Judgment [Dkt. #24] are DENIED, and this case is remanded to the Department of Interior with the order that the Moncrief lease be REINSTATED.

_____
RICHARD J. LEON
United States District Judge